UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

E.L.S (XXX-XX-9040)  CIVIL ACTION NO. 20-cv-573

VERSUS  CHIEF JUDGE HICKS

ANDREW M SAUL  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

E.L.S. ("Plaintiff") appeals from a denial of his application for social security disability benefits. Plaintiff, born in 1972, is a college graduate and has work experience as a minister, customer service representative, assistant admissions director, and loan collector. He alleges that he stopped working due to poor circulation, infections, and swelling in his left leg due to venous insufficiency. He filed for disability benefits in February 2016.

Administrative Law Judge ("ALJ") Lawrence Ragona held a hearing in 2018 and issued a decision that Plaintiff was not disabled within the meaning of the regulations. The Appeals Council vacated the ALJ's decision because it did not include a consideration or discussion of Plaintiff's 100% disability rating from the Veterans Administration ("VA"). The Appeals Council remanded to the ALJ and instructed him to consider the VA decision and explain the weight given to it.

On remand, ALJ Ragona again found that Plaintiff was not disabled within the meaning of the social security laws. The Appeals Council denied a request for review,

which made the ALJ's decision the Commissioner's final agency decision. Plaintiff then filed this civil action to seek judicial review under 42 U.S.C. § 405(g).

**Issues on Appeal**

The scheduling order (Doc. 10) stated that Plaintiff's brief must set forth in numbered paragraphs "the specific errors committed at the administrative level which entitle plaintiff to relief" and warned that the court would consider only those errors. Plaintiff's brief (Doc. 20) listed two errors based on the ALJ's alleged failure to properly consider the VA's 100% service-connected disability rating determination. Plaintiff argued that the ALJ's decision (1) violated the instructions in the Appeals Council's remand order, which 20 C.F.R. § 404.977 requires an ALJ to follow, and (2) was contrary to Social Security Ruling 06-03p and Fifth Circuit decisions regarding the consideration to be afforded findings made by another agency.

Plaintiff argued for the first time in his reply brief (Doc. 22) that the ALJ's decision is not supported by substantial evidence because the residual functional capacity ("RFC") in the ALJ's findings is not the same as the RFC in a question the ALJ posed to a vocational expert ("VE"). Plaintiff also raised a new argument in a supplemental brief (Doc. 27) that he is entitled to relief because ALJ Ragona was not properly appointed as required by the Appointments Clause at the time of his first (vacated) decision, even though ALJ Ragona was properly appointed by the time of his second and final decision that is under review on this appeal. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Relevant Evidence**

    **A. Hearing Testimony**

Plaintiff, represented by counsel, testified at two evidentiary hearings during the agency proceedings. He testified that he has a master's degree in public administration. He has worked as a collector for a finance company and an assistant director of admissions at a university. At the time of his 2018 hearing, he was working part-time as a pastor for $1,000 a month. He also collected VA benefits of $3,100 per month. Tr. 36-37.

Plaintiff suffers from Klippel-Trenaunay-Weber Syndrome ("KTWS"), which is a venous insufficiency that prevents his body from releasing fluid. Tr. 42. He had to stop working because he was sitting most of the day, which caused his leg to swell. He has two stents in his left leg and one in his right leg to try to keep the veins open, but he still has problems with his leg. Tr. 38. He takes blood thinners, wears compression socks, uses a massage device, and eats a plant-based diet to help with the swelling. Tr. 38-39. He is 5'7" tall and weighed 269 lbs. at the time of the first hearing. Tr. 35.

Plaintiff testified that fluid builds up in his legs when he sits or walks for prolonged periods. He usually sits with his leg above heart level to keep the swelling down. Tr. 39. In a typical day, he will sit in a recliner with his feet raised above heart level for around 85 percent of the day. Tr. 47. He has problems with his sciatic nerve caused by compensating for his left leg, so he uses a cane to walk. Tr. 42-43. He has had some inpatient hospitalizations due to infection, but hospitalization can often be avoided if the infection is caught early and treated with 7-10 days of antibiotics. Tr. 46.

Plaintiff testified that he used to enjoy fishing and playing sports, but he is no longer able to participate in those hobbies. Tr. 39. He works part time as a pastor, which includes preaching for 30 minutes per week. He can usually stand for the length of sermon. He used to make visits to the sick and shut-ins, and he participated in prison ministry, but he now limits those activities to telephone calls. Tr. 45.

The second hearing was in October 2019. Plaintiff's weight was up to 275 lbs., his VA benefits were up by $100, and his home conditions, living with his wife and daughter (18), were about the same as before. Most of the questions and answers from the first hearing were repeated, with a few additions and updates. Plaintiff said that he was receiving treatment at the VA medical center about every three months. He described that since 2015 he has experienced intermittent weeping from his recurrent ulcerations on his leg. Plaintiff described a recent toe surgery to remove a bone, and he said it was due to support hose causing his toes to rub together. He drives, once or twice a week, to the mailbox or to attend church. Counsel specifically mentioned the VA disability rating, submitted a missing page from the decision, and argued that it supported a finding of disabled under the social security rules. Tr. 51-69.

VE Harris Rowzie testified that Plaintiff's past work as a pastor would be light work under the regulations, but his work as a customer service representative and admissions director would be sedentary work. Rowzie testified that if Plaintiff were limited to sedentary work but could move around a little bit every so often, he could perform his past work as a customer service representative or admissions director. Those jobs would allow him to elevate his feet about a foot off the ground. However, if Plaintiff had to elevate his

feet above heart level for any period of time beyond normal breaks, that would eliminate all competitive employment. Tr. 69-71.

### B. Medical Records

Plaintiff was diagnosed with KTWS by the VA Medical Center in Chicago prior to 2015. Tr. 958. His medical records reflect a history of varicose veins and swelling in the lower extremities. Tr. 413, 418, 429. In January 2016, Plaintiff was diagnosed with phlebitis and vein compression. Tr. 454. Stents were placed in the veins in both of his legs. Tr. 452. Three weeks later, Plaintiff was admitted to the hospital for cellulitis. He was prescribed IV antibiotics and underwent a study that showed deep vein thrombosis in the left leg. Id.

Plaintiff visited the emergency department in June, July, September, and October 2016 for cellulitis in his left leg. Tr. 723, 742, 875-881, 896, 916. He visited the emergency department again in July 2017 for swelling in his left leg and was assessed with exacerbation of chronic lymphedema. Tr. 676. In September 2017, he visited the emergency department for pain related to sciatica. Tr. 653-55. He visited the emergency department again in January 2018 for cellulitis and in May of 2018 for leg pain caused by a superficial thrombus. Tr. 596-98, 1279-82. In July 2019, he visited the emergency department with complaints of foot pain. Tr. 1388-91. He was later referred to a podiatrist, who performed bunion surgery on Plaintiff's left foot. Tr. 1504.

At primary care appointments in August and November of 2018 and April 2019, Plaintiff's physical examinations were generally normal with no joint tenderness or swelling noted, and he was continued on his long-term medications. Tr. 1256-59, 1264-

69, 1400-07. He did continue to report chronic pain at these appointments, despite taking pain medication, and he rated the pain as 5 to 6 out of 10. Tr. 1402, 1269.

### C. Medical Opinion

Dr. James Williams, a state agency physician, did not physically evaluate Plaintiff but reviewed his medical records in July 2016. Dr. Williams opined that Plaintiff had problems related to poor circulation and swelling, but he was still able to perform most aspects of light work, including sitting for six hours per workday, standing/walking for four hours, and lifting/carrying 10 lbs. frequently and 20 lbs. occasionally. Dr. Williams noted that Plaintiff had problems with infections, but he said they improved with treatment. Tr. 73-82.

The next month, August 2016, Plaintiff underwent a Compensation and Pension Exam by Dr. Reginald Barnes of the VA Medical Center. Dr. Barnes physically examined Plaintiff and reviewed his medical records. Dr Barnes noted that Plaintiff served in the Army from March 1997 to July 1998; he received a medical discharge due to KTWS of the lower left leg. Plaintiff related the onset of the problem to an injury he experienced in basic training, which greatly limited his military career.

Dr. Barnes wrote that there is no surgical treatment for Plaintiff's KTWS and no real treatment with medication that would decrease the edema in the left leg. Compression stockings, and perhaps a compression pump could be helpful. Dr. Barnes opined that Plaintiff would have to sit down and elevate the leg to decrease the swelling if he were to participate in some areas of light activity. He added that Plaintiff could plausibly teleconference from home or work in an environment that would allow him to keep his left

leg elevated 90% of the time and the job was "very flexible with medical leave for procedures and appointments." He noted that, unless the recurrent infections of the leg could be contained, Plaintiff is at risk for amputation, and his other organs are at risk for damage from sepsis. Dr. Barnes did not specify the height to which Plaintiff would need to elevate his leg. Tr. 749-68.

**Summary of the ALJ's Decision**

    **A. The Five-Step Analysis**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. The regulations set forth a five-step sequential analysis, on which the claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. The steps are (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

**B. The ALJ's Findings**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 15, 2016.[1] At step two, the ALJ found that Plaintiff had the following severe impairments: Klippel-Trenaunay-Weber Syndrome with venous insufficiency and recurrent cellulitis, and morbid obesity. At step three, the ALJ found that Plaintiff's severe impairments were not so limiting as to meet or equal a listed impairment that would require a finding of disability without consideration of other factors. Tr. 13-14.

The ALJ next assessed Plaintiff's RFC, which is the most a claimant can still do despite his limitations. Kneeland v. Berryhill, 850 F.3d 749, 754 (5th Cir. 2017). The ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work, the least demanding classification of work,[2] except that he requires the ability to move around and/or elevate his legs to below heart level. Tr. 14.

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a customer service representative and admissions director. He based the finding on the VE's testimony that Plaintiff could perform those sedentary jobs, which he could do

---

[1] The ALJ acknowledged Plaintiff's part-time work as a pastor but stated that it was not necessary to determine whether the activity constituted disqualifying substantial gainful activity because there was a valid basis for denying Plaintiff's application. Tr. 13.

[2] The full range of sedentary involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling 83-10.

while elevating his foot about a foot off the ground. That finding ended the analysis and resulted in a decision that Plaintiff was not disabled.

**Standard of Review; Substantial Evidence**

A court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).

**Analysis**

**A. VA Opinion**

Plaintiff applied for benefits on March 17, 2016, and that date is relevant. Tr. 234-40. The ALJ denied the claim. The Appeals Council vacated that decision and remanded for resolution of certain issues, including the assessment of the VA finding that Plaintiff was disabled. The Appeals Council wrote:

> The hearing decision does not include a consideration or discussion of the Veterans Administration (VA) benefit entitlement, most recently dated April 20, 2018 (Exhibit 9F). Said entitlement notes that the VA has determined that the claimant is entitled to a 100% disability benefit rating. The basis for the VA's assessment was not provided by the claimant or his representative.
>
> Effective March 27, 2017 the Agency changed its rules regarding how opinion evidence and other evidence from sources who are not acceptable medical sources and how decisions on disability by other governmental and nongovernmental agencies will be considered and evaluated (20 CFR 404.1527(f)).

> However, decisions with an application filing date prior to the March 27, 2017 effective date are still required to address and contain an assessment of any statement that would direct the determination or decision of disability (in this case, the VA rating of 100% disability entitlement.
>
> \*\*\*
>
> Upon remand, the Administrative Law Judge will:
>
> Give consideration to non-examining source opinions, including governmental agency rating decision of the Veterans Administration, and explain the weight given to such opinion evidence. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing the record.

On remand, the ALJ found that Plaintiff was limited by his severe KWTS, but the combination of his impairments was not so severe as to preclude the performance of his past work. The ALJ noted that it appears Plaintiff's condition was generally controlled by his medication and that there were significant gaps in flare-ups that required emergency department treatment. The ALJ pointed to gaps, such as between October 2016 and July 2017, and May 2018 and July 2019. He also noted that at many primary care appointments, Plaintiff's chronic pain was noted to be stable. Tr. 17.

The ALJ gave moderate weight to the opinion of Dr. Williams, the state agency physician. Dr. Williams opined that Plaintiff could perform light exertional work, but the ALJ reduced Plaintiff's exertional level to sedentary based on a review of updated evidence. The ALJ gave moderate weight to the opinion of Dr. Barnes and stated that the ALJ's RFC finding accommodated the sitting and leg elevation limitations that Dr. Barnes recommended. Tr. 17.

The ALJ acknowledged that the VA awarded Plaintiff a 100% disability rating, but stated:

> However, the disability determination processes utilized by the VA and the Social Security Administration are fundamentally different. The VA does not make a function-by-function assessment of an individual's capabilities (i.e. determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the VA is of little probative value in these proceedings (20 C.F.R. 404.1504). Therefore, the undersigned has given that rating little weight.

Plaintiff argues that this did not follow the Appeals Council's order that the ALJ consider the VA opinion and "explain the weight given to such opinion evidence." The social security regulations provide that "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).

Plaintiff also argues that the ALJ did not give enough explanation to satisfy the jurisprudence on this issue and Social Security Ruling 06-03p (since vacated). The former Ruling instructed that an ALJ is:

> required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies.... Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.... [T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

The Commissioner repealed SSR 06-03p effective March 27, 2017 (after this application was filed). The current regulations recognize that other agencies may make disability

findings, but the findings of other agencies are based on different rules and are not binding. Therefore, in claims filed "on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 CFR § 404.1504. Section 404.1527 says that it governs the evaluation of opinion evidence for claims filed before March 27, 2017. Nonmedical sources, per § 404.1527(f), are assessed based on typical factors such as supportability, specialization, and consistency. The "adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

The Fifth Circuit's requirements with respect to a VA decision are summarized in the following passage from Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001):

> A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. See Loza v. Apfel, 219 F.3d 378, 394 (5th Cir.2000); Latham v. Shalala, 36 F.3d 482, 483 (5th Cir.1994); Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir.1981). In Rodriguez and its progeny, we have sometimes referred to a VA disability determination as being entitled to "great weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

In <u>Chambliss</u>, the ALJ considered a VA determination of permanent and total disability, but he gave it diminished weight. His decision was affirmed because he gave specific reasons for affording the diminished weight. He noted that the VA determination was made only a year after heart surgery, VA determination was conclusory and did not adequately explain why the claimant could not engage in light work activity, and the treating physician's opinion that supported the VA decision was discounted because it was for a need-based application for food stamps. The Fifth Circuit affirmed, despite the ALJ not giving "great weight" to the VA disability determination, "[b]ecause the ALJ considered the VA disability determination and set forth valid reasons for giving the determination diminished weight." <u>Chambliss</u>, 269 F.3d at 523. <u>See also</u> <u>Barraza v. Barnhart</u>, 61 Fed. Appx. 917 (5th Cir. 2003) (ALJ declined to adopt a VA rating of total disability because he found it was based on vocational rather than medical factors) and <u>Vaught v. Astrue</u>, 271 Fed. Appx. 452 (5th Cir. 2008) ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so.").

      The VA decision cited by Plaintiff is fairly brief. It states that "the evaluation of klippel-trenaunay-weber syndrome with varicose veins, left lower extremity is continued as 100% disabling." It adds that this is based on "massive board-like edema with constant pain at rest." Additional symptoms are listed as fatigue after prolonged standing or walking, intermittent ulceration, persistent edema (incompletely relieved by elevation of extremity), stasis pigmentation, and subcutaneous induration. Tr. 391-93.

The ALJ did not ignore the VA finding. He explained that he was mindful of the finding but discounted it because the disability determination processes utilized by two agencies are fundamentally different. In particular, the VA does not make a function-by-function assessment of an individual's capabilities to determine his RFC, which is demonstrated by the VA's decision just summarized. Nor, the ALJ noted, does the VA determine whether the claimant is able to perform his past relevant work, such as the sedentary jobs discussed by the ALJ and VE. Thus, he gave the VA opinion "little weight."

The undersigned finds that the ALJ gave adequate reasons, under the circumstances of this case, to satisfy the remand order with respect to the weight afforded the VA opinion. The Appeals Council had an opportunity to correct any error it found on that point, but it denied a request for review. The ALJ also gave adequate reasons to satisfy decisions such as <u>Chambliss</u> and the applicable regulatory requirements. His plausible reasons are sufficient to allow a reviewing court to follow and assess his reasoning.

Plaintiff complains that the ALJ did not adequately explain why he discounted the opinion, but Plaintiff's brief does not point to any particular findings of physical limitations with regard to lifting, standing, sitting, etc. in the VA opinion that would likely change the outcome in his social security case. Thus, if there is any shortcoming in the discussion of the weight of the VA decision, it is harmless error.[3] The ALJ assessed Plaintiff's RFC at

---

[3] The court should not vacate a decision based on a potential procedural flaw unless the substantial rights of a party have been affected. <u>Anderson v. Sullivan</u>, 887 F.2d 630, 634 (5th Cir. 1989); <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir.1988) ("Procedural perfection in administrative proceedings is not required."); and <u>Morris v. Bowen</u>, 864 F.2d 333, 335-36 (5th Cir.1988) (applying harmless error standard in social security case). <u>See</u> also <u>Palomo v. Barnhart</u>, 154 Fed.Appx. 426, n. 13 (5th Cir. 2005).

the least demanding level of work, and he allowed that Plaintiff had additional limitations. His conclusion may be debatable, but it is fairly and reasonably explained, and it is supported by substantial evidence[4], so it should be affirmed.

**B. VE Question**

Plaintiff argued for the first time in his reply brief (Doc. 22) that the ALJ's decision is not supported by substantial evidence because the RFC in the ALJ's decision contradicts the RFC posed to the VE at the hearing. The difference is that the VE was asked if the claimant could work if he had to elevate his foot "maybe a foot high" such as on a small pillow, and the RFC in the decision required the ability to "move around and/or elevate his legs to below heart level." Plaintiff argues that it is too vague whether below heart level would be satisfied by elevation one foot high.

It is well-settled in the Fifth Circuit that "[a]rguments raised for the first time in a reply brief are generally waived." Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010) (collecting cases); Royal Alice Properties, LLC v. AMAG, Inc., 2022 WL 278926, *2 (E.D. La. 2022) (Vance, J.). And "a district court abuses its discretion when it considers new arguments raised for the first time in a reply brief without providing the non-movant an adequate opportunity to respond prior to a ruling." Residents of Gordon Plaza, Inc. v. Cantrell, __ Fed. 4th __, 2022 WL 292919, *4 (5th Cir. 2022) (internal quotations removed).

---

[4] A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

The briefing schedule required Plaintiff to list his errors for appeal in his opening brief.  The facts supporting this issue were all in the record, so Plaintiff could and should have timely presented it in his opening brief.  By not raising the issue until his reply, he deprived the Commissioner of a fair opportunity to respond to the argument. There was more briefing later in the case, but that was focused solely on yet another late-raised issue, the Appointments Clause challenge addressed below.  The court should consider this VE issue waived and decline to address the merits.

**C. Appointments Clause**

The Supreme Court held in Lucia v. Securities and Exchange Commission, 138 S. Ct. 2044, 2055 (2018) that SEC ALJs were "inferior officers" subject to the Appointments Clause and that a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."  Social Security ALJs were hired through a process similar to SEC ALJs. The Acting Commissioner of Social Security addressed the issue by ratifying the appointment of all Social Security ALJs on July 16, 2018. See Social Security Ruling 19-1p; and 1 Social Security Claims and Procedures § 1:5 (6th ed.).

Later, Carr v. Saul, 141 S. Ct. 1352, 1356 (2021) held that social security claimants are not required to raise a Lucia-style Appointments Clause claim at the administrative level to preserve it for judicial review.  Carr issued April 21, 2021, and Plaintiff filed his opening brief April 27, 2021.  Plaintiff did not raise a Lucia error until he sought leave to file a supplemental brief in October 2021. Counsel states that he did not fully appreciate the scope and impact of Carr until a few months after it issued.  The Commissioner argues

that Plaintiff forfeited this claim by not raising it in his opening brief. Despite the issue being raised after initial briefing, the undersigned will assess the claim on the merits; this is an unusual situation where the law changed significantly during the course of the proceedings, and Plaintiff raised the issue before the court took up the case on the merits. His tardiness should be forgiven in these circumstances.

Turning to the merits, Plaintiff argues in his supplemental brief (Doc. 27) that he is entitled to relief for an Appointments Clause violation because ALJ Ragona was not properly appointed as required by the Appointments Clause at the time of Plaintiff's first *hearing* on April 24, 2018, even though ALJ Ragona was properly appointed by the time he issued his first (vacated) decision in October 2018, held a second post-remand hearing in October 2019, and issued the second decision—under review here—in November 2019. The Commissioner argues that Plaintiff's appearance at the first hearing is of no moment, given that the first decision was vacated by the Appeals Council, and Plaintiff received a full, new hearing and decision from a properly appointed ALJ Ragona on remand.

The ALJ in Lucia "heard and decided Lucia's case without the kind of appointment the Clause requires." Lucia, 138 S.Ct. at 2055. Lucia made a timely challenge to the validity of the ALJ's appointment, and the Supreme Court held that the method of appointment was invalid. The Court then noted that it has "held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." Lucia, quoting Ryder v. U.S., 115 S.Ct. 2031 (1995). The Lucia court said that it added one more thing to the remedy:

> That official cannot be Judge Elliot, even if he has by now received (or receives sometime in the future) a constitutional appointment. Judge Elliot has already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before. To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled.

Lucia, 138 S.Ct. at 2055 (footnotes omitted). The Court stated in footnote 5 that its "new ALJ" remedy created an incentive for a litigant to raise an Appointments Clause challenge. If a successful challenge resulted only in a new hearing before the same ALJ, "the old judge would have no reason to think he did anything wrong on the merits … and so could be expected to reach all the same judgments." Lucia, 138 S.Ct. at 2055 n. 5.

The portions of Lucia just discussed address the proper remedy, which assumes that there was an Appointments Clause violation. There was no violation in this case because ALJ Ragona's appointment had been ratified—and Plaintiff does not challenge the validity of the ratification—at the time of both the hearing and decision that are under review on this appeal. The only thing ALJ Ragona did before his appointment was ratified was to hold the first hearing. But the Appeals Council vacated the decision that followed that hearing and remanded for further consideration of the VA finding and other merits-related issues. The remand was not to remedy an Appointments Clause challenge, which had not been raised by Plaintiff at that time. The ALJ then held a new hearing at which he thoroughly explored the evidence and did not merely adopt the earlier hearing. He then issued a new written decision, and this appeal followed. Thus, there was no Appointments Clause violation that affected the decision under review.

Plaintiff's argument was rejected in Camille B. v. Kijakazi, 2021 WL 4205341 (E.D. Va. 2021), in which the Appeals Council vacated an ALJ's decision and remanded for further review due to merits-based issues. Lucia was issued, and the Commissioner ratified the ALJ's appointment before the ALJ held a post-remand hearing and issued a new decision. The plaintiff appealed and argued in federal court that she was entitled to a different ALJ in the second hearing, but the court found Lucia inapplicable because the Appeals Council's vacating of the original decision rendered it void and of no legal effect, so the only decision on review by the court was made after the ALJ's appointment was ratified. The undersigned finds that analysis persuasive.

This case does not present a situation that Lucia's remedy directive was intended to address. ALJ Ragona did not receive the case on remand to correct an Appointments Clause challenge, which might have allowed him to simply adopt his prior decision. Rather, the remand was based on merits issues that required a new hearing and a new decision on the merits. That new decision was issued after the ALJ was properly appointed. There was no Appointments Clause violation related to that decision, so no relief is warranted with respect to this final issue.

Accordingly,

It is recommended that the Commissioner's decision be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of February, 2022.

Mark L. Hornsby
U.S. Magistrate Judge